UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MIGUEL VALENZUELA,

            Petitioner,

v.

UNITED STATES OF AMERICA

            Respondent.
_____/

CIVIL ACTION NO. 05 CV 70742 DT
CRIMINAL NO. 00-80572-08

DISTRICT JUDGE BERNARD A. FRIEDMAN

MAGISTRATE JUDGE VIRGINIA M. MORGAN,

**REPORT AND RECOMMENDATION**

**I. Introduction**

This matter comes before the court on petitioner's motion to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255. For the reasons stated herein, the court recommends that the motion be **DENIED**.[1]

**II. Background**

Petitioner was indicted on a charge of conspiracy to possess with intent to distribute more than 1,000 kilograms of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 846.[2] The case

---

[1] The court, having examined the record, finds that no hearing is necessary in this matter because "the files and records of the case conclusively show that the prisoner is entitled to no relief[.]" 28 U.S.C. § 2255.

[2] The facts of this matter are fully set forth in the Sixth Circuit's opinion affirming petitioner's conviction and thus need not be discussed in detail here. See United States v. Miguel Valenzuela, 88 Fed.Appx. 909, 2004 WL 376852 (6th Cir.(Mich.)). Only those facts relevant to petitioner's motion will be discussed herein.

proceeded to trial, at which the Government presented evidence establishing that Eduardo Rodriguez, James McManigal, and others had obtained and distributed well over 1,000 kilograms of marijuana. The Government also presented evidence linking petitioner to the conspiracy, including evidence that he had sold marijuana for Rodriguez for a number of years, that he had procured drivers for Rodriguez to transport truck loads of marijuana from Arizona to Michigan, and that he arranged for the marijuana to be stored until it could be sold or redistributed.

    Petitioner testified in his own defense at trial. He admitted, among other things, that he had sold 40 pounds of marijuana for McManigal on one occasion, but claimed that he had not otherwise sold any marijuana for Rodriguez, McManigal, or anyone else associated with the conspiracy. With regard to his dealings with McManigal, petitioner testified that McManigal asked him to sell the 40 pounds of marijuana because McManigal had gotten "busted" and needed money to pay his legal fees. (TT, Vol. 4, p. 54-55) Petitioner further testified that he sold the marijuana for the sole purpose of helping McManigal, whom petitioner considered to be a friend, that he turned all of the proceeds of the marijuana sales over to McManigal, and that he otherwise received no compensation for his sale of the marijuana. (TT, Vol. 4, pp. 53-55, 80, 85) Unbeknownst to petitioner at the time he agreed to sell the marijuana, McManigal had been arrested on drug-trafficking charges and was cooperating with law enforcement authorities in their investigation of the activities of he and his associates. McManigal wore a transmitting and

recording device during several conversations with petitioner during which they discussed drug-trafficking activities. Tape recordings of those conversations were introduced at trial.[3]

In both his opening and closing arguments, petitioner's trial counsel conceded that petitioner had sold marijuana for McManigal, but argued that petitioner was not part of the larger conspiracy involving McManigal and Rodriguez and that he was not otherwise involved in any drug trafficking activities. Counsel further argued that the Government's use of McManigal to persuade petitioner to sell marijuana constituted entrapment.

The jury rejected counsel's arguments and found petitioner guilty as charged. The district judge sentenced petitioner to a term of imprisonment of 168 months, which was the minimum sentence under the mandatory Federal Sentencing Guidelines scheme, and a term of supervised release of five years. The Sixth Circuit affirmed petitioner's conviction and sentence. Valenzuela, supra n.1, 88 Fed.Appx. 909, 2004 WL 376852. Petitioner now seeks to vacate his conviction and sentence, claiming that he was denied his Sixth Amendment right to the effective assistance of counsel. Petitioner contends that counsel conceded his guilt at trial without first obtaining his consent and, therefore, that he was denied the effective assistance of counsel under the rule established in Wiley v. Sowders, 647 F.2d 642 (6th Cir. 1981).

---

[3]McManigal committed suicide prior to Valenzuela's trial. Anthony Carter, a Drug Enforcement Agent, testified at trial as to the content of the tapes.

### III.  Analysis

#### A.  Legal Standard

The Sixth Amendment to the United States Constitution guarantees to a criminal defendant the right to "the Assistance of counsel for his defence." U.S. Const. amend. VI.  As the Supreme Court has recognized, a defendant is entitled not merely to the assistance of counsel, but to the *effective* assistance of counsel.  McMann v. Richardson, 397 U.S. 759, 771, n. 14, 90 S.Ct. 1441, 1449, n. 14 (1970)("[T]he right to counsel is the right to the effective assistance of counsel").  A petitioner claiming that he was denied the right to the effective assistance of counsel must demonstrate (1) that his attorney's performance was deficient, and (2) that he suffered prejudice as a result of his attorney's deficient performance.  Strickland v Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984).  With respect to the first prong of this two-part test, the petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Id.  As to the second prong of the test, the petitioner bears the burden of establishing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id., 466 U.S. at 694, 104 S.Ct. at 2068.  In reviewing a claim of ineffective assistance of counsel, the court must "indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance[.]"  Id., 466 U.S. at 689, 104 S.Ct. at 2065. As the Supreme Court stated in Strickland:

> Judicial scrutiny of counsel's performance must be highly
> deferential.  It is all too tempting for a defendant to second-guess
> counsel's assistance after conviction or adverse sentence, and it is

> all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.

Strickland, 466 U.S. at 689, 104 S.Ct. at 2065 (citations omitted).

Though a defendant claiming ineffective assistance of counsel must generally demonstrate that he suffered actual prejudice as a result of counsel's deficient performance, prejudice may be presumed under certain circumstances. See United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039 (1984). This exception applies in the following circumstances: "(1) when the petitioner was denied counsel at a critical stage of the proceedings; (2) when the petitioner's counsel 'failed to subject the prosecution's case to meaningful adversarial testing'; and (3) when the circumstances of the trial prevented counsel from affording effective representation." French v. Jones, 332 F.3d 430, 439 (6th Cir. 2003)(quoting Cronic, 466 U.S. at 659, 104 S.Ct. at 2047). As discussed further below, petitioner claims that the Cronic exception should be applied to his claim.

### B. Discussion

#### (I) Attorney Error

In support of his claim of ineffective assistance of counsel, petitioner relies on Wiley v. Sowders, supra, 647 F.2d 642. In Wiley, the defendant was indicted in the State of Kentucky on charges of first degree burglary, theft of the value of $100 or more, and being a persistent felony offender in the second degree. He pleaded "not guilty" to the charges. In an apparent effort to

2:00-cr-80572-BAF   Doc # 334   Filed 06/03/05   Pg 6 of 13   Pg ID 398

obtain leniency from the jury, the defendant's attorney made several statements during his closing argument in which he unequivocally conceded that the defendant was guilty as charged.[4] Following post-trial proceedings in state court, the defendant filed a petition in federal court for a writ of habeas corpus, claiming that because counsel admitted his guilt without first obtaining his consent to such a strategy, he was denied the effective assistance of counsel. The district court denied the petition. On appeal, the Sixth Circuit reversed, concluding that counsel, by admitting the defendant's guilt, effectively entered a guilty plea on his behalf and that counsel was ineffective for doing so without first obtaining the defendant's consent. Id. at 650 ("We, therefore, hold that petitioner was deprived of the effective assistance of counsel when his own lawyer admitted his client's guilt, without first obtaining his client's consent to this strategy."). Petitioner contends that trial counsel's admission that petitioner sold marijuana at McManigal's request constituted an admission of petitioner's guilt, that petitioner did not consent to such a strategy and, therefore, under the holding of Wiley, that he was denied his Sixth Amendment right to the effective assistance of counsel.

The matter before the court is readily distinguishable from Wiley. Here, counsel specifically conceded that petitioner sold 40 pounds of marijuana for McManigal on one occasion to help McManigal with his financial difficulties. He otherwise vigorously denied that petitioner participated in, intended to join, or knew about the wider conspiracy involving McManigal, Valenzuela, and their associates. (TT, Vol. 4, pp. 206-223) That is a far cry from

---

[4]Under the procedures in place at the time in the State of Kentucky, the jury was responsible for not only determining the defendant's guilt or innocence, but also for fixing the defendant's sentence. See Wiley, 647 F.2d at 644, n. 4.

- 6 -

counsel's unequivocal concession in <u>Wiley</u> to each of the charges set forth in the indictment. Moreover, counsel made the admission for the purpose of advancing an entrapment defense. A strategic decision to make a limited factual admission for the purpose of advancing an affirmative defense is a substantially different matter than offering a full admission of guilt in the mere hope of obtaining leniency from the jury. Further, though a defendant need not admit his involvement in the charged offense in order to raise an entrapment defense, <u>Mathews v. United States</u>, 485 U.S. 58, 108 S.Ct. 883 (1988), it is well within the wide range of reasonable professional assistance for counsel to concede one or more elements of the offense in an effort to bolster such a defense. <u>See</u>, <u>e.g.</u>, <u>United States v. Schake</u>, 57 Fed.Appx. 523, 525, 2003 WL 202439 (3rd Cir.(Pa.))("Schake's concession [of guilt] made his entrapment defense more plausible than it otherwise would have seemed"). Based on the above, the court finds that the facts of this case are sufficiently distinct to render the rule established in <u>Wiley</u> inapplicable. Though it is certainly wise practice for an attorney to obtain his client's consent before admitting any facts showing the client's involvement in the charged offense, the Sixth Amendment does not require that consent be given in every case where counsel concedes such a fact. As the Supreme Court stated in <u>Nixon</u>, 125 S.Ct. at 560 (citations omitted), "[a]n attorney undoubtedly has a duty to consult with the client regarding important decisions, including questions of overarching defense strategy. That obligation, however, does not require counsel to obtain the defendant's consent to every tactical decision." Under the facts of this case, counsel's limited admission for the purpose of advancing an entrapment defense constituted a matter of trial strategy for which petitioner's express consent was not necessary.

Further, even if, under Wiley, petitioner's consent to counsel's admission was required, it is appears from the record that petitioner did, in fact, consent to such a strategy. As noted above, petitioner took the stand in his own defense and testified that McManigal came to him requesting his help in selling 40 pounds of marijuana, that McManigal indicated that he was in financial trouble, that petitioner sold the marijuana strictly to help McManigal with his financial difficulties, and that petitioner received no money for selling the marijuana. (TT, Vol. 4, pp. 51-58) It is evident from petitioner's decision to testify and from his admission of these facts that he consented to counsel's decision to raise an entrapment defense and to make factual admissions in furtherance of the defense.

In sum, the court concludes that counsel was not required to obtain petitioner's express consent to make limited factual admissions in order to advance petitioner's entrapment defense, and that even if petitioner's consent was required, the record establishes that consent was given. Accordingly, petitioner has failed to establish that his attorney's performance was deficient.

### (ii) Prejudice

Under Strickland, a petitioner claiming ineffective assistance of counsel must demonstrate not only that his counsel's performance was deficient, but also that counsel's errors prejudiced his defense. Assuming for the sake of discussion that counsel erred in admitting that petitioner sold marijuana for McManigal, petitioner still cannot prevail on his motion because, as discussed below, he has failed to demonstrate that he suffered prejudice as a result of counsel's error.

Petitioner contends, however, that the facts of this matter warrant application of the Cronic exception to the prejudice requirement. Again, Cronic applies "(1) when the petitioner was denied counsel at a critical stage of the proceedings; (2) when the petitioner's counsel 'failed to subject the prosecution's case to meaningful adversarial testing'; and (3) when the circumstances of the trial prevent[ed] counsel from affording effective representation." French, supra, 332 F.3d at 439. Petitioner does not contend that he was denied counsel at a critical stage of the proceedings or that counsel was prevented from affording effective representation. Rather, he contends that application of the Cronic exception is warranted because counsel failed to subject the prosecution's case to meaningful adversarial testing. The court disagrees.

In Wiley, which was decided before Cronic and Strickland, the Sixth Circuit determined that the defendant suffered prejudice as a result of his attorney's unequivocal concession of guilt, but left open the question of whether a showing of actual prejudice was required in such cases. However, the Sixth Circuit has routinely applied the Strickland standard, rather than the Cronic standard, in subsequent cases involving a concession of guilt by counsel. See, e.g., Ashley v. Koehler, 840 F.2d 16, 1988 WL 12146 (6th Cir.(Mich.)); Volpe v. Johnson, 70 F.3d 1273, 1995 WL 84544 (6th Cir.(Mich.)); U.S. v. Earthman, 920 F.2d 934, 1990 WL 198931 (6th Cir.(Ohio)); see also, e.g., U.S. v. Holman, 314 F.3d 837 (7th Cir. 2002). Thus, it appears that as a matter of law, the Strickland standard is generally applicable to claims involving a concession of guilt and that a showing of prejudice is therefore necessary.

That is not to say that the Cronic exception could never apply to an attorney's admission of his client's guilt. Under the proper set of facts, application of the exception may be

warranted. However, application of that standard would be wholly inappropriate under the facts of this case. In order for the Cronic exception to apply based upon a failure to subject the prosecution's case to meaningful adversarial testing, "the attorney's failure must be complete." Bell v. Cone, 535 U.S. 685, 697, 122 S.Ct. 1831, 1851 (2002). Counsel must "'*entirely* fail[] to subject the prosecution's case to meaningful adversarial testing.'" Id. (quoting Cronic, 466 U.S. at 659, 104 S.Ct. at 2047). Here, counsel flatly denied that petitioner was involved in the conspiracy charged in the indictment, he presented an entrapment defense, he vigorously cross-examined the Government's witnesses, he called a number of witnesses to testify on defendant's behalf, and he gave impassioned opening and closing arguments. Counsel clearly subjected the Government's case to meaningful adversarial testing. Accordingly, to the extent counsel erred in admitting that petitioner sold 40 pounds of marijuana for McManigal, his conduct must be examined under the prejudice standard of Strickland.

      Turning to the question of prejudice, petitioner took the stand and admitted, among other things, that he sold marijuana for McManigal, that he helped arrange storage for Rodriguez, and that he paid $9,000 on behalf of McManigal and Rodriguez to an individual who drove a shipment of marijuana from Arizona to Michigan. Thus, petitioner himself admitted to far greater involvement in drug-trafficking activities than counsel admitted in his arguments to the jury. It is difficult to believe that counsel's limited admission had any more effect on the jury than petitioner's more extensive admissions. Moreover, contrary to petitioner's assertions, the evidence presented at trial was more than sufficient to establish that he was an integral part of

the conspiracy. As the Sixth Circuit stated in rejecting petitioner's insufficiency of the evidence argument:

> Although he claims he was not a participant in the conspiracy, the record is replete with testimony regarding his drug sales and his efforts to advance the purposes of the conspiracy by both procuring drivers to transport the marijuana from Arizona to Michigan and by arranging storage of the shipments upon their arrival. Furthermore, the trial testimony established the defendant's connection with at least 1,000 pounds of marijuana, not just with the 40 pounds Valenzuela claims he sold only to help out a friend in need. Indeed, the 3,000 pound shipment in June 2001 alone exceeded the charged 1,000 kilogram amount, without reference to the defendant's involvement with numerous other large marijuana shipments and with other marijuana sales on Rodriguez's behalf. Hence, the record is clearly not devoid of evidence of Valenzuela's guilt of conspiring with Rodriguez and others to possess with intent to distribute more than 1,000 kilograms (or 2,200 pounds of marijuana).

Valenzuela, supra, 88 Fed.Appx. at 912, 2004 WL 376852 at **3. In light of the substantial evidence of petitioner's guilt and petitioner's own admissions, it cannot be said that there is a reasonably probability that the outcome of the trial would have been different but for counsel's admission that petitioner sold 40 pounds of marijuana for McManigal.

### IV. Conclusion

Based on the foregoing, the court finds that petitioner has failed to establish either attorney error or prejudice. Accordingly, the court recommends that plaintiff's motion to vacate his conviction and sentence pursuant to § 2255 be **DENIED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as

provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

                                      s/Virginia M. Morgan
                                      VIRGINIA M. MORGAN
Dated:  June 3, 2005              UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MIGUEL VALENZUELA,

        CIVIL ACTION NO. 05 CV 70742 DT

    Petitioner,        CRIMINAL NO. 00-80572-08

  v.       DISTRICT JUDGE BERNARD A. FRIEDMAN

UNITED STATES OF AMERICA        MAGISTRATE JUDGE VIRGINIA M. MORGAN,

    Respondent.
_____/

## REPORT AND RECOMMENDATION

**Proof of Service**

The undersigned certifies that a copy of the foregoing report and recommendation was served on the attorneys of record herein by electronic means or U.S. Mail on June 3, 2005.

        s/Jennifer Hernandez
        Case Manager to
        Magistrate Judge Morgan